UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN MOYA,

       Plaintiff,

v.

DIVERSIFIED ADJUSTMENT
SERVICE, INCORPORATED,

       Defendant.
_____/

## I. Introduction

1. This is an action for damages brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*, and Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*

## II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 47 U.S.C. § 227 *et seq.* (TCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## III. Parties

3. Plaintiff Jonathan Moya is an adult, natural person residing in Kent County, Michigan. Mr. Moya is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Moya is a "consumer," "debtor" and "person" as the terms are defined and used in

1

the MOC. Mr. Moya is a "person" as the term is defined and used in the TCPA.

4. Defendant Diversified Adjustment Service, Incorporated ("DAS") is a Minnesota corporation. The registered agent in Michigan for DAS is Registered Agent Solutions, Inc., 2285 South Michigan Road, Eaton Rapids, Michigan 48827. DAS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. DAS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. DAS is a "debt collector" as the term is defined and used in the FDCPA. DAS is licensed (No. 2401000994) by the State of Michigan to collect consumer debts in Michigan. DAS is a "collection agency" and "licensee" as the terms are defined and used in MOC. DAS is a "person" as the term is defined and used in the TCPA.

## IV. Facts

5. Mr. Moya had a credit account with Sprint which he used to cellular telephone goods and/or services for personal, family or household purposes. Any resulting obligation of Mr. Moya to pay money was a "debt" as the term is defined and/or used in the FDCPA and MOC.

6. Mr. Moya's Sprint account was closed.

7. In or about January of 2013, Mr. Moya applied to Sprint for new cellular telephone service but Sprint declined the application, claiming that Mr. Moya still owed money to Sprint in connection with Mr. Moya's prior, closed account. Sprint refused to provide Mr. Moya with information regarding Mr. Moya's closed account. Sprint stated that Mr. Moya's closed account had been placed for collection with defendant Diversified Adjustment Service, Incorporated. Sprint instructed Mr. Moya to contact DAS and provided Mr. Moya with the

telephone number for DAS.

8. On or about January 21, 2013, Mr. Moya placed a call to DAS and spoke by telephone with a DAS employee. The DAS employee asked Mr. Moya to provide his social security number, telephone number, and current residential address. Mr. Moya provided the requested information. The DAS employee stated that in November of 2012, Sprint had placed Mr. Moya's delinquent Sprint account with DAS for collection and that Mr. Moya owed $803.68. The DAS employee stated that DAS had reported the account on Mr. Moya's credit. Mr. Moya stated that he had never received anything in writing from DAS. The DAS employee stated that DAS had sent a letter, addressed to Mr. Moya at his former address of 138 Sutton Street, S.W., Grand Rapids, Michigan, but that the letter was returned to DAS as undeliverable. Mr. Moya stated that he was not willing to make payment arrangements with DAS until he had received something in writing from DAS. The DAS employee refused to agree to send a letter to Mr. Moya at his correct address, and instead told Mr. Moya to "check your credit and give us a call when you're ready to take care of this. Mr. Moya asked to dispute the debt with the DAS employee, but the DAS employee stated: "There's no dispute to this. You owe this bill sir. There's no dispute."

9. On or about January 22, 2013, Mr. Moya placed a call to DAS and spoke by telephone with a DAS employee. Mr. Moya stated that as instructed by the prior DAS employee, he had attempted to obtain a copy of his credit report so that he could determine whether DAS was listed on his credit report, but that the attempt failed because Mr. Moya did not have a credit card as required by the credit bureaus. The DAS employee stated that DAS had reported the account on Mr. Moya's credit. Mr. Moya stated that he had never received anything in writing

from DAS. Mr. Moya stated that he disputed the amount of the debt because the amount seemed excessive. Mr. Moya stated that he disputed the debt because he had received nothing in writing from DAS, did not know anything about DAS, and was not satisfied that DAS had the right to collect the debt. Mr. Moya demanded that the next time DAS communicated with Sprint or the credit bureaus regarding the debt, DAS was also to communicate that the debt was disputed by Mr. Moya. The DAS employee replied that Mr. Moya had 30 days to dispute the debt and implied that the time to dispute the debt had passed.

10. The FDCPA does not require the consumer to provide *any reason at all* in order to dispute a debt. *Sambor v. Omnia Credit Servs.*, 183 F. Supp. 2d 1234 (D. Haw. 2002); (*Mendez v. M.R.S. Assoc.*, 2004 WL 1745779 *2 (N.D. Ill. Aug. 3, 2004) (a consumer is entitled to dispute the validity of a debt for a good reason, a bad reason, or no reason at all); *Whitten v. ARS National Servs. Inc.*, 2002 WL 1050320 *4 (N.D. Ill. May 23, 2002) (imposing a requirement that a consumer have a 'valid' reason to dispute the debt is inconsistent with FDCPA); *Castro v. ARS National Servs., Inc.*, 2000 WL 264310 (S.D.N.Y. Mar. 8, 2000); *Frey v. Satter, Beyer & Spires*, 1999 WL 301650 (N.D. Ill. May 3, 1999); *DeSantis v. Computer Credit, Inc.*, 269 f.3d 159 (2nd Cir. 2001); *Mejia v. Marauder Corporation*, 2007 WL 806486 (N.D. Cal. 2007) (unlawful to suggest that proof of payment required for dispute).

11. The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false, "including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The FDCPA does not require the consumer to dispute the debt in writing in order to invoke the protections of 15 U.S.C. § 1692e(8). *See, Brady v. The Credit Recovery*

4

*Company, Inc.*, 160 F.3d 64 (1st Cir. 1998).

12. Credit reporting constitutes an attempt to collect a debt. *See, e.g., Rivera v. Bank One,* 145 F.R.D. 614, 623 (D.P.R. 1993)(a creditor's report of a debt to a consumer reporting agency is a "powerful tool, designed, in part, to wrench compliance with payment terms from its cardholder"); *Matter of Sommersdorf,* 139 B.R. 700, 701 (Bankr.S.D. Ohio 1991); *Ditty v. CheckRite, Ltd.,* 973 F.Supp. 1320, 1331 (D.Utah 1997).

13. On or about January 21, 2013, Mr. Moya stated to a DAS employee that he disputed the alleged debt, which triggered the protections of the FDCPA and obligated DAS when communicating in the future with any entities (including Sprint and the consumer reporting agencies) regarding the account and related debt to also communicate to those entities that the debt was disputed by Mr. Moya. That in turn would obligate the consumer reporting agencies whenever making a consumer report regarding Mr. Moya and the account to include a notation that the debt was disputed by Mr. Moya.

14. On or about January 22, 2013, Mr. Moya stated to a DAS employee that he disputed the alleged debt, which again triggered the protections of the FDCPA and obligated DAS when communicating in the future with any entities (including Sprint and the consumer reporting agencies) regarding the account and related debt to also communicate to those entities that the debt was disputed by Mr. Moya. That in turn would obligate the consumer reporting agencies whenever making a consumer report regarding Mr. Moya and the account to include a notation that the debt was disputed by Mr. Moya.

15. DAS and its employees made false statements to Mr. Moya regarding Mr. Moya's right to dispute the debt.

16. The DAS employee with whom Mr. Moya spoke by telephone on January 21, 2013 falsely represented and falsely implied to Mr. Moya that Mr. Moya could not dispute the debt. Specifically, the DAS employee stated: "There's no dispute to this. You owe this bill sir. There's no dispute."

17. The DAS employee with whom Mr. Moya spoke by telephone on January 22, 2013 wrongfully represented and wrongfully implied to Mr. Moya, that in future communications between DAS and Sprint regarding the debt, DAS would not communicate to Sprint that Mr. Moya had disputed the debt.

18. The DAS employee with whom Mr. Moya spoke by telephone on January 22, 2013 wrongfully represented and wrongfully implied to Mr. Moya, that in future communications between DAS and the consumer reporting agencies regarding the debt, DAS would not communicate to the consumer reporting agencies that Mr. Moya had disputed the debt.

19. The DAS employee with whom Mr. Moya spoke by telephone on January 22, 2013 falsely represented and falsely implied to Mr. Moya, that Mr. Moya had only 30 days to dispute the debt and that the time for Mr. Moya to dispute the debt had passed.

20. Each of the false representations and false implications regarding the dispute process and credit reporting, made by DAS and its employees, would tend to mislead or confuse the reasonable, least sophisticated consumer.

21. The reasonable, least sophisticated consumer, could be mislead, confused and coerced into paying a disputed debt, upon hearing the false representations and false implications made by DAS and its employees. Stated differently, the misrepresentations made to Mr. Moya by DAS and its employees were material misrepresentations.

22. It is unlawful for a debt collector to make a false representation of the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

23. It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

24. It is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt. 15 U.S.C. § 1692e(6)(A).

25. It is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA. 15 U.S.C. § 1692e(6)(B).

26. It is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false. 15 U.S.C. § 1692e(8).

27. It is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

28. It is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

29. DAS violated the FDCPA, 15 U.S.C. §§ 1692e(2)(A), (5), (6)(A), (6B), (8) and (10), and 1692f.

30. The FDCPA states in pertinent part that within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the information is contained in the initial communication or the consumer has paid

7

the debt, send the consumer a written notice containing the information set forth at 15 U.S.C. § 1692g(a).

31. The initial communication between DAS and Mr. Moya in connection with the collection of the alleged debt occurred on January 21, 2013, when Mr. Moya spoke by telephone with a DAS employee.

32. DAS failed to send Mr. Moya within five days of the initial communication between DAS and Mr. Moya in connection with the collection of the alleged debt, a written notice containing the information set forth in 15 U.S.C. § 1692g(a), and thereby violated the FDCPA.

33. The acts and omissions of DAS and its employees done in connection with efforts to collect the alleged debt from Mr. Moya were done intentionally and wilfully.

34. DAS and its employees intentionally and wilfully violated the FDCPA and MOC.

35. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

36. DAS, to increase its business and profits, knowingly chose to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who choose to abide by the law and refrain from using unlawful debt collection practices.

37. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to,

8

monetary loss, fear, physical stress, mental anguish, emotional stress, acute embarrassment and suffering for which he should be compensated in an amount to be established by jury and at trial.

V. **Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

38. Plaintiff incorporates the foregoing paragraphs by reference.

39. Defendant violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

- a) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

- b) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt; and

- c) Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

- a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);
- b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);
- c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and
- d) Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

40. Plaintiff incorporates the foregoing paragraphs by reference.

41. Defendant violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor;

c) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive and abusive method to collect a debt;

d) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

e) Defendant violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: January 28, 2013

_____
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com